[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The State entered into a contract with Peabody N.E. Inc. (Peabody) to complete a large highway project. Subsequently Peabody entered into a contract with the subcontractor, Standard CT Page 571 Structural Steel, to complete a portion of the work. The F.D.I.C. as Receiver is now pursuing the claims of Standard and has brought an action against Peabody, the general contractor, for certain damages and delay claims.
Peabody as third-party plaintiff has now impleaded the third-party defendant, Connecticut Department of Transportation (Condot). Peabody denies any liability in the original action but has impleaded Condot alleging that if in fact it were found liable to the plaintiffs, Condot should be held responsible for any judgment.
Condot filed a motion to dismiss the third-party complaint and one of the grounds alleged is that Peabody failed to provide the notice required in § 4-61 of the General Statutes to bring an action on a contract claim against the State. In fact, the third-party complaint originally filed doesn't reference § 4-61 and doesn't allege that notice was given pursuant to § 4-61 which both parties agree would have to be the basis of any action against Condot.
Failure to allege notice according to Condot deprives the court of subject matter jurisdiction. I could find no cases discussing the notice provision of § 4-61. The argument advanced very generally is to the following effect: the State is protected by sovereign immunity, it can be sued only at its sufferance, giving of notice is a condition precedent to bringing suit and if it is not alleged there is no case before the court, when a statute allowing claims against the State requires notice be given within a certain period of time the claimant "must plead and accomplish satisfaction of that requirement in order to maintain an action under that statute."
Obviously the State can only be sued with its consent, Whitev. Burns, 213 Conn. 307, 312 (1990); Horton v. Meskill, 172 Conn. 615,623, 624 (1977). Waiver of the sovereign's right can only be found if there is a clear intention to do so. State ofConnecticut v. Shelton, 47 Conn. 400, 404-405 (1879).
After the motion to dismiss was filed Peabody filed a motion to amend its third-party complaint. In the proposed amended complaint § 4-61 was referenced and Peabody alleges that notice under the statute was in fact given. Condot then filed a motion to strike the amended complaint and an objection to Peabody's motion to amend. Condot argues that its motion to CT Page 572 dismiss attacks the subject matter jurisdiction of the court and once such a motion is filed, "cognizance of it must be taken and the matter passed upon before it can move a further step in the cause, as any movement is necessarily the exercise of jurisdiction." Baldwin Piano Organ Co. v. Blake, 186 Conn. 295,297 (1982). This, after all, is an assertion of lack of subject matter jurisdiction based on sovereign immunity says Condot, so that if the motion is granted the action is void ab initio.
The allegations of the motion to dismiss are intrinsically bound up with the issues raised by the motion to strike the amendment and the objection to the amendment so that will discuss all these issues in one memorandum of law. First, I will discuss the notice issue, then I will discuss other issues raised in the motion to dismiss.
(1.)
The language in § 4-61 stating a contract claim may be brought against the State provided the requisite notice is given "in writing to the agency head of the department administering the contact" is perhaps less draconian than the language of §13a-144. That statute permits actions against the State for injuries resulting from a defective highway. It then says that: "No such action shall be brought . . . unless notice of such injury and a general description of the same and of the cause thereof and of the time and place of its occurrence has been given in writing within ninety days thereafter to the commissioner (of transportation.)"
However, for the purposes of this discussion, I will assume that the net effect of the notice language in both statutes is the same. That is, as to § 4-61 I will accept that giving appropriate notice under the terms of that statute as under §13a-144 is a so-called condition precedent to bringing suit.Chevka v. Maurice Winfield a/k/a, et al, 8 CSCR 1067 (1993).
Cases arising out of a § 13a-144 action are useful for analyzing the problem before the court in this case because both statutes allow suits against the State in derogation of sovereign immunity and both contain requirements that notice be given as a condition precedent to bringing the action. The purpose of including the requirement of notice to State officials is roughly the same. The State agencies can better prepare their defense, gather the information and material to that end, and conduct any CT Page 573 necessary inspections to protect the state's interests.
How then does or should the problem of an alleged failure to give statutory notice arise procedurally, especially where notice isn't even alluded to by the plaintiff in the complaint? If the issue in fact involves subject matter jurisdiction, a motion to dismiss is the appropriate vehicle. That could be rather draconian; I suppose I could read the files in all the §13a-144 actions and if notice isn't properly alleged, dismiss the actions whether or not notice was in fact given. Of course a due process hearing would be required but if the mere failure to allege notice raises subject matter jurisdiction, the emphasis would be on "process" not "due".
On the other hand, there is § 185 of our Practice Book which says:
 "Whenever in an action of tort or upon a statute the plaintiff is compelled to allege the giving of a notice required by statute, he (sic) shall either recite the same in his (sic) complaint or annex a copy thereto."
That Practice Book section seems aimed at giving defendants in such cases the right to file a motion to strike if the notice is not recited or annexed to the complaint. At this point the language of Gurliacci v. Mayer, 218 Conn. 531, 544 (1991), becomes important; there the court said:
 "We have previously held that if a `pleading . . . on its face is legally insufficient, although facts may indeed exist which, if properly pleaded, would establish a cause of action upon which relief could be granted' a motion to strike is required . . . a motion to dismiss, by contrast, `properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court."'
 Gurliacci was an action under § 7-465 of the General Statutes which provides that despite worker's compensation a municipal employee has a cause of action for negligence against a fellow employee for injuries occurring while that employee was acting (1) outside the scope of employment, or (2) wilfully and maliciously. The court noted at page 544 that the defendant did not dispute that had the complaint alleged either exception, "the case would have been properly before the court." If it didn't, it CT Page 574 would not have been properly before the court and a motion to strike was the appropriate remedy. If notice is not given, an action against the State is also not "properly before the court". To semantically describe the giving of notice as a "condition precedent" to bringing the action, doesn't alter the fact that what is really the case is that if notice is not given, the matter is not before the court. If the legislature waives sovereign immunity as to a particular class of cases the courts have subject matter jurisdiction over those cases. If a party does not allege notice in accordance with the Practice Book requirements, it subjects the complaint to a motion to strike but the fact that notice is not alleged does not mean it may not have been given. Thus, at the time that the notice question is before the court, it cannot be said that "the plaintiff cannot as a matter of law and fact state a cause of action." 218 Conn., page 544. Subject matter jurisdiction means the power of a court to hear and decide cases of the general class to which the one before the court belongs. Subject matter jurisdiction doesn't mean "this case", it means "this kind of case". In re Estate ofRougheron, 270 N.Y.S.2d 578, 583 (1966).
Turning specifically to notice provisions in statutes allowing suit against the State, a certain degree of strained reasoning would be required to permit characterizing notice issues as raising questions of subject matter jurisdiction.
Thus, in most situations the appellate courts have said that notice under § 13a-144 and the question of whether it is adequate is not a matter of law but one of fact. Morico v. Cox,134 Conn. 218, 223 (1947); Zotta v. Burns, 8 Conn. App. 169, 173
(1986). What does this mean — Is the issue of notice one of subject matter jurisdiction only where no notice is alleged, or it can be said to be inadequate as a matter of law? Or, if the question of notice cannot be decided as a matter of law, is the issue then no longer one of subject matter jurisdiction or even more fancifully are we saying in such cases the trier of fact, judge or jury, decides the question of subject matter jurisdiction? To paraphrase the discussion in Gurliacci
at 218 Conn. 544-545 concerning the statute before it, let's assume that a complaint does allege notice was given and the court can't conclude as a matter of law that it was inadequate. If trial were held and the factfinder ultimately concluded that notice was inadequate, "the court would be compelled to conclude that it had no subject matter jurisdiction over the case that it had tried solely because the plaintiff failed to establish an essential CT Page 575 element of the cause of action." As the court said, this indeed would be a "bizarre" result. Allowing the plaintiff in some circumstances to prove at trial the adequacy of notice is inconsistent with the issue of notice attaining the level of a question of subject matter jurisdiction, c.f. Nicholaus v.Bridgeport, 117 Conn. 398, 402 (1933), where notice alleged in complaint and denial entered, court said this became a matter of proof at the trial.[1]
In any event, historically notice issues and the adequacy thereof in suits against the State under § 13a-144 have been raised by way of demurrer or motion to strike made possible by the Practice Book requirement that notice be alleged, Rapid MotorLines Inc. v. Cox, Highway Comm'r., 134 Conn. 235, 236, 237
(1947); LoRusso v. Hill, Highway Comm'r., 139 Conn. 554, 556, 557
(1953); Tucker v. Ives, Hwy. Comm., 22 Conn. Sup. 468 (1961);Kuchenski v. Burns, Comm. of Transportation, 23 Conn. App. 198
(1990); Greene v. Ives, 25 Conn. Sup. 356, 357 (1964); Shine v.Powers, Comm. of Transp., 37 Conn. Sup. 710, 711 (1981) (motion to strike).
Interestingly, Condot in its January 13, 1995 brief filed with its motion to dismiss, cites the case of Shaw v. IndustrialSafety Supply Co. et al, 23 Conn. Sup. 149 (1952), for the unimpeachable proposition that no relief against the State will lie on a statutory cause of action if the pleadings don't allege that every statutory requirement has been satisfied. The defendant town argued in that case that no claim had been presented to the Town of Simsbury, a defendant, within thirty days as required by § 7-308 of the General Statutes. The defendant town prevailed — but on a demurrer, the common law equivalent of our motion to strike.
The only cases at the appellate level that grant relief to the State for failure to give the required notice under §13a-144 through the granting of a motion to dismiss as opposed to a motion to strike, are Bresnan v. Frankel, 224 Conn. 23 (1992) and Ozmun v. Burns, 18 Conn. App. 677 (1989).[2] I looked at the appellate record in Bresnan and the motion to dismiss filed by the State did raise the issue as one of subject matter jurisdiction. However, neither Bresnan nor Ozmun in their decisions mention the concept of "subject matter jurisdiction". Characterizing the motion before it the court in Bresnan merely said at 224 Conn. 25: "The commissioner moved to dismiss the complaint on the ground that the plaintiff had not provided CT Page 576 adequate notice under § 13a-144." Also both Bresnan and Ozmun
cited Morico v. Cox, 134 Conn. 218, 223 (1947), for the proposition that ordinarily adequacy of notice is a question for the jury not the court, except where as a matter of law the notice is inadequate — again this is not the language of subject matter jurisdiction.
The State is adequately protected in its ability to present its admittedly important claim of sovereign immunity to a §13a-144 or § 4-61 action. It can file a motion to strike and where this doesn't serve to air the issue expeditiously, a motion for summary judgment can be filed before the pleadings are even closed.
I will not grant the motion to dismiss for lack of subject matter jurisdiction based simply on the fact that notice pursuant to § 4-61 wasn't alleged. I would have granted a motion to strike on the grounds that failure to make the allegation rendered the original complaint legally insufficient. However, that is not the precise basis of the motion to dismiss and to avoid further delay I will grant the request by Peabody to amend the complaint as to notice and overrule the defendant Condot's objection to that request.
(2.)
Another basis for Condot's motion to dismiss is based on its analysis of Walter Kidde Constructors, Inc., et al v. State ofConnecticut, 37 Conn. Sup. 50 (1981).
In Kidde-Brisco, the plaintiff was a general contractor who had entered into a contract with the State to build a medical center. After disputes arose the plaintiff brought suit against the State. In the original complaint several paragraphs sought to recover so-called "delay damages" allegedly caused to eight subcontractors. Another judge had sustained the defendant's demurrer to this portion of the complaint since it did not allege liability of the general, Kidde-Brisco, to the subcontractors for damages claimed to have been caused to the subcontractors by the alleged breaches of contract by the defendant State.
Kidde-Brisco pointed to the reasoning of Wexler ConstructionCo. v. Housing Authority, 149 Conn. 602, 605 (1962), as the basis for the prior ruling in the case. The Kidde-Brisco court said, at pages 68-69: CT Page 577
 "`A contractor is not necessarily nor even generally liable to its subcontractor for the extra work done by the subcontractor by reason of fault on the part of the owner or his agents,' proof of the liability of the prime contractor to the subcontractor is a prerequisite to recovery by the prime contractor for an injury alleged to have been sustained by the subcontractor. Wexler Construction Co. v. Housing Authority, 149 Conn. 602, 605, 183 A.2d 262 (1962). It is not enough in an action by the prime contractor that that contractor proves that a subcontractor who is not a party to the suit and was not a party to the prime contract may or does have a cause of action against the other party to the prime contract. Knapp v. New Haven Road Construction Co., 150 Conn. 321, 324, 189 A.2d 386 (1963). `A plaintiff can recover only by providing that he himself is entitled to prevail on the cause of action alleged. It is not enough that he prove that some other person, not a party to the case, would be entitled to recover on that cause of action.' Wexler Construction Co. v. Housing Authority, supra, 605."
The court then went on to note that as a result of the ruling on the demurrer a substituted complaint was filed wherein Kidde-Brisco alleged not only that the particular subcontractor had presented to Kidde-Brisco a claim for a specific amount of delay damages allegedly caused by the State's breach of contract, but also that Kidde-Brisco itself was liable for those damages.
The State filed an answer leaving Kidde-Brisco to its proof and also several special defenses. The State pleaded that the subcontractors had executed and delivered to the plaintiffs an affidavit and waiver of lien which waived all liens and claims against the owner (the State) and the general, Kidde-Brisco. As to several subcontractors, their contracts with the general explicitly stated Kidde-Brisco could not be liable for any delay caused by the general or the State. A further special defense alleged Kidde-Brisco and each subcontractor had entered into a liquidating agreement. Under the agreement Kidde-Brisco agreed to act as a conduit for the subcontractors' claims in the present suit in consideration of which the subcontractors agreed never to sue or attempt to enforce any claims against Kidde-Brisco.
A trial was had on the substituted complaint and the court found the State had proved the factual allegations in the special defenses. The court found also that the State had proven its CT Page 578 special defense of governmental immunity since waiver of the immunity is granted under § 4-61 only to parties which have entered into a contract with the State in the event of disputed claims under such contract. None of the subcontractors entered into a contract with the State and each is barred from suing the State whether suit is brought by them directly or through a conduit contractor like Kidde-Brisco who had entered into a contract with the State. 37 Conn. Sup. at pp. 73-74.
Condot argues that Peabody's third-party complaint only asserts subcontractor claims against the State which Peabody has not paid and for which it has not admitted any liability. In its answer to the plaintiff F.D.I.C.'s complaint which asserts the claims of the subcontractor, Peabody in fact explicitly denies any such liability exists. The third-party defendant, Condot, argues that Peabody doesn't even go as far as the general Kidde-Brisco — at least there liability to the subcontractor was admitted by Kidde-Brisco. Because no admission of liability is asserted then the third-party action must be dismissed argues Condot. That is so because it is thus evident that Peabody in its third-party action is merely acting as the conduit for the subcontractor's claim. Condot argues further that the subcontractor did not enter into a contract with the State so that its claim does not arise out of a dispute regarding such contract and § 4-61 does not permit the action. This would appear to be in accord with Kidde-Brisco and the statutory language. A broad reading of this language to the effect that the "contract" referred to in § 4-61 alludes to the contractual obligations to complete the whole job by the general and conduit suits should be allowed even if the subcontractor didn't enter into a contractual relationship to the State would appear to go too far. The point of § 4-61 is to allow suits where disputes arise as to contracts entered into by a contracting party and the State over the terms of that contract and whether there has been a breach of those terms. A broad reading allowing so-called pass through claims without more by subcontractors would violate the interpretative rules placed on courts dealing with statutes creating exceptions to sovereign immunity. White v. Burns,213 Conn. 307, 312 (1990).
But having said all that, it should be noted that Kidde-Brisco
relied on Wexler Construction Co. v. Housing Authority,149 Conn. 602 (1962), for the proposition that generally a contractor is not liable to its subcontractor for extra work done by the subcontractor by reason of fault on the part of the owner. CT Page 579 But Wexler did not involve a claim of sovereign immunity by the State. If in fact, the general is liable to the subcontractor then the general should have a viable claim against the State. In such a case the general contractor is not acting as a mere conduit for the subcontractor's claim — in fact its liability to the subcontractor would arise from its general contractual liability to the State to complete the job. Under such circumstances it is difficult to see how the general contractor's claim against the State would not fall within the type of claim for which § 4-61 waiver sovereign immunity.[3]
The State would argue that Peabody can't take advantage of such an argument and rely on a theory of liability to the subcontractor because, as noted, in its answer it explicitly denied such liability and in ruling on the motion to dismiss I am confined to the pleadings. But the "pleadings" here include Peabody's third-party complaint which in effect says if Peabody is held liable to the plaintiff which asserts the subcontractor's rights, then the State would have to indemnify Peabody. Practice Book § 117 which permits impleader says a defendant can move for permission to implead "a party . . . who is or may be liable to him (sic) for all or part of the plaintiff's claim against him (sic)." (Emphasis added,) The impleader section of the federal rules, Rule 14, is similar to ours and a commentator has said: "Of course a defendant may protect himself (sic) by alleging that a third party is liable to plaintiff when he (sic) denies his (sic) own liability." Federal Practice Procedure, Wright, Miller, Kane, Vol. 6, § 1446 at p. 380-382.
The State maintains, however, that Peabody can't resort to impleader practice because Practice Book § 117 states that "a person" may be impleaded. Section 1-1(k) of the general statutes defines "person" and none of the definitions would include the State. But § 1-1(k) by its own terms only applies to the "construction of the statutes" not to the language of the Practice Book. Rule 6 of the Practice Book states the rules should be liberally interpreted. The joinder sections of the Practice Book, § 84 and § 85, use the word "person" but it could hardly be said they couldn't apply to the State when it is a litigant. I believe Peabody can appropriately use impleader practice to bring the State into the case.
What it comes down to then is whether once the State is impleaded and raises a sovereign immunity defense, must an immediate hearing be held to resolve what is characterized as a CT Page 580 defense going to the jurisdiction of the court. Certainly a motion to dismiss can raise a claim of sovereign immunity but such a defense can be raised by a special defense which can be resolved at trial, Gentile v. State of Conn., 2 Conn. Sup. 431
(1987), cf. Kidde-Brisco, itself, where the sovereign immunity issue was raised by way of a special defense and was resolved after a full trial on the issues. 37 Conn. Sup. at pp. 53 and 73-74. The resolution of the sovereign immunity claim is so intertwined with the resolution of the plaintiff F.D.I.C.'s complaint against Peabody, I believe that this claim is not conducive to being decided on affidavits or an evidentiary hearing but must be resolved after a full trial (as in Kidde-Brisco)
or perhaps by way of summary judgment. As noted earlier, this is really not an unusual approach even if the cry of lack of jurisdiction is raised. Thus, when questions of personal jurisdiction are raised under Rule 12b(2) in the federal courts: ". . . if the jurisdictional facts are intertwined with the facts of the merits of the action, a prima facie showing should suffice under subsection 12b(2) of Federal Rules of Civil Procedure and proof of jurisdiction should be left for trial." Admittedly the sovereign immunity issue is framed in terms of raising subject matter jurisdiction but the point remains that resolution of the question depends on a full hearing of another party's claim (the subcontractor) which the court certainly has jurisdiction to decide. Then we are back to the analytical merry-go-round alluded to earlier in this decision. Facts necessary to resolve a claim of subject matter jurisdiction are resolved by a trier of fact clearly acting within the scope of its subject matter jurisdiction. If the State establishes this claim of course it will prevail. All I am saying that once impleader is allowed in a situation like the one before me, a resolution of the claim can only await a full trial on the merits if it can't be resolved by way of a motion for summary judgment.
In that sense all the dire predictions of the State about the consequences of "overruling" Kidde-Brisco don't arise since the proper ambit of that case won't be decided until there is a full hearing on the merits in this case. In any event I do not believe it would be appropriate to grant the motion to dismiss and/or deny Peabody the right to amend its third-party complaint under the guise of protecting the State's right to rely on the defense of sovereign immunity. Peabody and the F.D.I.C. should have a chance to litigate the propriety of that defense and deprival of that right is certainly not required by any reading of the doctrine of sovereign immunity that I'm aware of. CT Page 581
The motion to dismiss is denied and the objection to Peabody's request to amend its third-party complaint is denied.
Corradino, J.